**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PABLO HURTADO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WALMART STORES, INC./STORE #5134,<br><br>　　　　　Defendant. | Case No.: 1:14-cv-01706 - --- JLT<br><br>ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. 5) |

　　　In this action, Pablo Hurtado is suing his employer, Walmart Stores, because he claims that they denied him promotions and required him to collect shopping carts based upon his gender. (Doc. 5 at 2) However, because Plaintiff fails to state a cognizable claim, his complaint is **DISMISSED with leave to amend**.

**I.　　Screening Requirement**

　　　When a plaintiff proceeds *in forma pauperis*, the Court is required to review the complaint, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is "frivolous, malicious or fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2). A claim is frivolous "when the facts alleged arise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

**II.    Allegations of the Complaint**

Plaintiff was hired by a Walmart store in Bakersfield, California, in 2009.  (Doc. 5 at 3)  Initially, Plaintiff worked in the meat department because he had experience as a butcher.  *Id*.  However, in 2011, Plaintiff submitted a complaint to the Department of Fair Employment and Housing because he felt he was suffering mistreatment by co-workers based upon his sexual orientation and his age.  *Id*.

To resolve this complaint, in late 2011, Plaintiff accepted a transfer to the "money center" in the store.  (Doc. 5 at 3)  To work in the money center, Plaintiff needed additional computer-based training though he was not allowed to begin this training until February 2012.  *Id*. at 5.  From his transfer until his training began, he was required to collect hangars, handle "go-backs" and collect shopping carts left in the parking lot.  *Id*.  Despite completing the computer training, Walmart continued to require him to collect carts or it threatened he would "get his hours cut."  *Id*.  Plaintiff "repeatedly" complained to the managers in the money center, the human resources director and the store manager about having to perform this duty but he was told that until the store could hire more people, he would have to do this work.  *Id*. at 5-6.  Plaintiff alleges that even after new employees were hired, he was still required to collect carts.  *Id*. at 6.  Plaintiff observed that the female cashiers, apparently not assigned to the money center, were not required to collect carts and only females were hired as "front end supervisory lead positions."  *Id*.  But two male cashiers were also required to collect carts, like he was.  *Id*.

In April 2013, Plaintiff filed a complaint with DFEH because he felt he was being mistreated by being required to collect the carts.  (Doc. 5 at 6)  When he complained to management that it was difficult to keep the carts collected due to the cart collector being broken, members of management called him and the other car collectors, "whining girls, pussys, [they'd say] be men or be a man."  *Id*.  When Plaintiff complained that "he didn't want to continue working in that kind of conditions," the assistant manager, Rosie, told Plaintiff he could handle it because he was a "big boy."  *Id*.  When Plaintiff complained to the store manager, Harry Fenske, and used the meeting as an opportunity also to ask for a raise, the store manager told Plaintiff that he was overpaid because he was making more than what cart pushers are supposed to be paid.  *Id*.

1    During the time Plaintiff was employed with WalMart, he alleges he received favorable
2    employment appraisals. (Doc. 5 at 9)  One, undated evaluation is favorable (*Id*. at 83) and his 2012
3    appraisal is generally favorable (*Id*. at 84), though both rate him as a "solid performer" which is the
4    descriptor in the middle of the five point scale which, seemingly, means Plaintiff was an average
5    worker.

6    Other appraisals were not as positive.  In his 2010 appraisal, his supervisor reported, "Pablo is
7    a very good worker but when things are said he takes it to extreme.  He does not do so good with other
8    associates.  He also needs to woory [sic] about his job duties and not what others are doing." (Doc. 5
9    at 82.)  In his 2013 appraisal, the supervisor noted, "Struggles to accept constructive feedback
10   positively and/or fails to make adjustments based on feedback. Performs inconsistent actions or
11   behaviors after new work practices, procedures, and standards are implemented.  Displays no initiative
12   to solve problems and ensure work is completed timely and accurately.  Performs duties and
13   assignments in a manner that results in a negative shopping experience for customers, including failure
14   to focus on customers." *Id*. at 86.

15   Likewise, on February 17, 2011, Plaintiff was disciplined for failing to follow direction related
16   to his morning duties when he instead spent 20 minutes complaining to the department manager about
17   issues that had been addressed in the past. (Doc. 5 at 71)  The manager noted that his action "lowers
18   morale and adds more work to other coworkers." *Id.*

19   On April 12, 2013, Plaintiff was disciplined for failing to take his meal break in a timely
20   fashion.  (Doc. 5 at 64, 66-67)  On April 16, 2013, Plaintiff was "written up" after the employer
21   learned that he had suffered a work-related injury two months before but failed to report it at the time.
22   (Doc. 5 at 9, 62-63)

23   On August 13, 2013, Plaintiff was disciplined after he "tendered a bill payment improperly"
24   which lost the store money and impacted a customer's satisfaction with the shopping experience.
25   (Doc. 5 at 73) On November 27, 2013, Plaintiff was disciplined for providing "very poor customer
26   service." *Id*. at 75.

27   Despite these critiques and instances of discipline, Plaintiff alleges derisively that managers
28   thought he "was always outshined by female coworkers and [they] were given promotions, higher

3

raises, and preferred schedules even thou they had attendance issues and poor work habits (performance)." (Doc. 5 at 10)  Plaintiff alleges that many of the store's management were males and they asked female employees out on dates which he describes as "concentual [sic] sexual harassment" and alleges that one female employee became pregnant by a male manager. *Id*.  Plaintiff surmises that it is rampant sexual harassment which may motivate the store to restrict the "front end" to females.  *Id*.  He alleges also that women are the majority in the grocery, deli, meat and bakery departments of the store. *Id.*

Seemingly, Plaintiff alleges that he suffered retaliation for filing DFEH complaints because he claims that managers "would set the bar higher and have more unrealistic expectations for Mr. Hurtado" as punishment for the DFEH complaints.[1]  (Doc. 5 at 11)

Plaintiff alleges Walmart management told himt he was disqualified from promotions due to the discipline that he suffered.  (Doc. 5 at 11)  He claims that this is unfair because the acts of discipline were "bogus" and that he saw females committing the same acts for which he was disciplined though they were not.  *Id*.  Likewise, he alleges that two female employees were promoted despite that they had suffered discipline.  *Id.*

### III.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner, and identify the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The Supreme Court noted,

---

[1] Because Plaintiff provides no factual allegations to support this conclusion, the Court cannot conclude that he intended to state a claim related to this complaint.

4

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 566 U.S. at 678 (citations omitted). When factual allegations in a complaint are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief. *Id.* However, legal conclusions are not entitled to the same assumption of truth. *Id.* Leave to amend a complaint may be granted when its deficiencies can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### IV.     Title VII Claims

Title VII prohibits discrimination in the "compensation, terms, conditions or privileges of employment" based upon a person's gender. 42 U.S.C. § 2000e-2(a)(1). The purpose of this section is to prohibit "disparate treatment of men and women in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotation marks omitted). "'Disparate treatment' such as is alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

To establish a prima facie case of gender discrimination, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse

5

employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiff complains that he and other male employees are required to collect carts while female employees are not. He asserts that when he complained that the motorized "cart collector" was broken—in explanation for why the inventory of carts in the store ran low—he, and the others collecting carts, were called, "whining girls, pussys [sic]" or told to "be men or be a man."[2] (Doc. 5 at 7)

Assigning job duties to certain employees based upon their gender may constitute actionable discrimination. Here, it is clear, Plaintiff does not like collecting the shopping carts and, the Court imagines that this work can subject the employee to hot weather in summer as well as other inclement weather during the rest of the year. However, it is not clear how being required to collect these carts constituted a material change in the terms and conditions of Plaintiff's job. Though he indicates that he felt like he was required to handle this duty every day he worked, even if this is true, there is no factual allegation demonstrating how much time Plaintiff spent on this duty during any given shift or how this duty impacted his job as a whole.

Moreover, Plaintiff attaches evidence to his complaint that contradicts this claim.[3] (Doc. 5 at 26-27) The evidence attached indicates that both females and males were asked to collect carts though the four employees—which did not include Plaintiff—whose primary job function was to cart collectors—called Stock Associates—were all men. *Id.* In any event, Plaintiff has failed to set forth *factual* allegations demonstrating that females were not required to collect carts; instead, he simply *concludes* they were not. This is insufficient. *Iqbal*, 556 U.S. at 677. Finally, though the comments

---

[2] Apparently, when the motorized cart collector was broken, the employees were obligated to manually push the carts to the store's interior.

[3] The Court is not obligated to accept as true conclusory allegations made in the complaint especially when they are contradicted by exhibits attached to it. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

In addition, Plaintiff is advised that he need not attach exhibits to his complaint and, indeed, the Court will not cull through these exhibits in an attempt to find a cognizable claim. Instead, even if the attachments demonstrated wrongful conduct—though they do not here—the body of the complaint *must* set forth factual allegations as to each element of the prima facie case such to give the Defendant fair notice of the claims Plaintiff is pursuing. Fed. R. Civ. P. 8.

made by managers impugning Plaintiff because of his complaint that the cart collector was broken implies a discriminatory animus, without an adverse employment action, this , alone, is not actionable.

Second, Plaintiff claims that he was not promoted though other female employees were.[4] Refusal to promote an employee based upon his gender violates Title VII.  42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of a discriminatory failure to promote, Plaintiff must demonstrate that (1) he applied for and was qualified for a job for which the employer was seeking applicants; (2) he was rejected for the position; and (3) either his employer filled the position with a woman or consider candidates with qualifications equal to Plaintiff after rejecting him. *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiff alleges he "noticed" that the store hired only females to be cashiers[5] and to supervise the "front end" but he fails to allege any facts that he sought to be hired as a cashier or a supervisor of the "front end" or, if he did, when he did this or how these hiring policies had any impact on him. (Doc. 5 at 6)  Indeed, he does not allege that he applied for any promotion or describe who received the promotions he believed he should have received—assuming he applied for any.

Moreover, though he claims that he always had good performance reviews, as detailed above, on many occasions his job appraisals contained significant criticism and he was disciplined many times.[6]  Despite this, Plaintiff alleges that he was passed over for promotions in favor of females who had "poor work habits" and "attendance issues."   (Doc. 5 at 9-10)  Likewise, he alleges that he was not given as sizable of raises as these females.  *Id*.  In doing so, he fails to provide any factual support for either of these claims.  Finally, though Plaintiff claims that he suffered discipline for acts for which females were not disciplined, he fails to provide any factual support for this conclusion.

As a result, Plaintiff has failed to set forth any cognizable claim and the complaint must be **DISMISSED with leave to amend.**

---

[4] Again, the Court notes that Plaintiff attaches evidence to his complaint that contradicts this claim as well.  (Doc. 5 at 28-29) In these documents, Walmart demonstrated to the satisfaction of the DFEH that during the time Plaintiff was eligible for promotion to a supervisory position, six people were promoted; two of which were already working in supervisory positions and three of which were males.  *Id.*

[5] Confusingly, Plaintiff alleges that two **male** cashiers were asked to collect carts and, it appears, he may be referring to himself as a "cashier."  (Doc. 5 at 6) Thus, it appears that, Plaintiff's allegations to the contrary, men *were* hired as cashiers.

[6] The mere fact that Plaintiff disagreed with the discipline imposed or that he calls them "bogus," is insufficient as factual support for the claim that, indeed, the discipline was imposed in an unlawful manner.

**VII. Conclusion and Order**

A plaintiff should be granted leave to amend when the deficiencies of the complaint can be cured by amendment. *Lopez*, 203 F.3d at 1130. A complaint, or a portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the Plaintiff can prove no set of facts, consistent with the allegations, in support of the claim or claims that would entitle her to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In this case, it is unclear whether Plaintiff can allege facts supporting his conclusions that Defendant violated any of his rights provided by federal law. Therefore, the Court will grant **one final opportunity** for Plaintiff to cure the deficiencies identified above by stating facts sufficient to support claims against the Defendant. The amended pleading must bear the docket number assigned this case and must be labeled "Second Amended Complaint."

Plaintiff is advised that the Court cannot refer to a prior pleading in order to make an amended complaint complete. Local Rule 220 requires the amended complaint to be "complete in itself without reference to the prior or superseded pleading." As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Thus, once Plaintiff files a Second Amended Complaint, the previously filed complaints no longer are considered operative. Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted).

Moreover, as noted above, Plaintiff is advised that, while he may attach documents to his complaint, **these attachments cannot take the place of well-pleaded factual allegations that must appear in the body of the complaint**.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's First Amended Complaint is **DISMISSED** with leave to amend;
2. Plaintiff **SHALL** file a Second Amended Complaint within 30 days from the date of service of this Order; and
3. Plaintiff is advised that the action may be dismissed for failure to comply with this

Order. *See e.g. Ferdik v. Bonzelet,* 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissing the action for failure to comply with an order requiring amendment of complaint).

IT IS SO ORDERED.

Dated:   **December 23, 2014**                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE